**BRYAN CAVE LEIGHTON PAISNER LLP**
Sharon Z. Weiss (SBN 169446)
Olivia J. Scott (SBN 329725)
sharon.weiss@bclplaw.com
olivia.scott3@bclplaw.com
1920 Main Street, Suite 1000
Irvine, California 92614-7276
Telephone:    +1 949 223 7000
Facsimile:    +1 949 223 7100

*[Proposed] Attorneys for Debtor and Debtor in Possession*

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:22-bk-14165 |
| Treetop Development, LLC, | Chapter 11 |
| Debtor. | **APPLICATION OF THE DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF BCLP AS SUBSTITUTE COUNSEL FOR THE DEBTOR AND DEBTOR-IN-POSSESSION PURSUANT TO 11 U.S.C. § 327 EFFECTIVE AS OF OCTOBER 7, 2022; DECLARATION OF SHARON Z. WEISS IN SUPPORT THEREOF** |
| | *[Filed contemporaneously with Declaration of Sharon Z. Weiss; Statement of Disinterestedness and [Proposed] Order]* |
| | **[NO HEARING REQUIRED UNLESS REQUESTED]** |

Treetop Development, LLC, as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Debtor**"), respectfully states the following in support of this retention application (this "**Application**"):

## REQUESTED RELIEF

Pursuant to section 327(a) of title 11 of the United States Code ("**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure ("**FRBP**") and Rule 2014-1(b) of the Local Rules of Bankruptcy Practice and Procedure ("**LBR**") of the United States Bankruptcy Court for the Central District of California ("**Court**"), the Debtor respectfully requests that the Debtor be granted authority to retain and employ Bryan Cave Leighton Paisner LLP ("**BCLP**") as substitute general bankruptcy and restructuring counsel for the Debtor, pursuant to LBR 2091-1(b), and seeks entry of an order, substantially in the form of the *[Proposed] Order Authorizing Retention and Employment of BCLP as Substitute Counsel for the Debtor and Debtor-In-Possession Pursuant to 11 U.S.C. § 327 Effective as of October 7, 2022* filed contemporaneously herewith ("**Order**"), authorizing the employment and retention of BCLP as its general bankruptcy and restructuring counsel, effective as of October 7, 2022.[1] In support of this Application, the Debtor submits BCLP's *Statement of Disinterestedness*, the *Declaration of Sharon Z. Weiss* (the "**Weiss Declaration**"), and those exhibits attached thereto, all of which being filed contemporaneously herewith.

## JURISDICTION AND VENUE

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, as this matter constitutes a core proceeding. Moreover, venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. Finally, the Debtor consents to the Court's entry of a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

The Debtor filed the above-captioned chapter 11 petition on August 1, 2022 ("**Petition Date**"). The Debtor continues to manage its chapter 11 estate as debtor-in-possession. No official committee has been appointed in this chapter 11 case.

---

[1] As more fully described herein, the Debtor has previously obtained authority to retain general bankruptcy counsel. *See* Docket No. 40. For the reasons explained herein, original counsel executed a substitution of attorney, attached hereto as **Exhibit A**.

## CASE BACKGROUND

The Debtor commenced its chapter 11 bankruptcy case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date.  The Debtor is wholly-owned by Casablanca Grand LLC ("**Casablanca**"), which served as the Debtor's sole principal and manager. Casablanca is, in turn, is wholly-owned by Mohamed A. Hadid.

Based on the Debtor's *Schedule of Assets and Liabilities* [Docket No. 19] (generally, "**Schedules**"), the Debtor's primary asset is a residential real property development project located at 9650 Cedarbrook Drive, Beverly Hills, California, 90210 consisting of six parcels of land totaling approximately 27.73 acres ("**Property**"). The Schedules value the Property at $105 million, foundation complete. The Debtor anticipates that the Property will be worth at least $250 million upon completion of a fully permitted 78,000 square foot luxury residence and secondary structure that may be permitted as a guesthouse, or second, independent home.[2] Construction commenced at the Property in 2019 with grading and partial placement of caissons and retaining walls. However, construction halted in 2020 when construction lending to the Debtor was terminated causing various mechanics' liens to be asserted against the Property.

Based on the Schedules, on January 28, 2022, the construction lender, Skylark Capital Management, LLC ("**Skylark**") began foreclosure proceedings with respect to the Property and caused to be recorded a *Notice of Default and Election to Sell Under Deed of Trust in the Los Angeles County Recorder's Office* (Doc. No. 20220112342). Then on May 23, 2022, Skylark caused to be recorded a *Notice of Trustee's Sale in the Los Angeles County Recorder's Office* (Doc. No. 20220551753).  Based on interviews with the Debtor, the Debtor contends that Skylark defaulted on its construction lending obligations. One of the central issues in this case is the validity, priority and extent of the Skylark claim.  Once Skylark's claim is resolved, the Debtor expects to pay all valid liens against the Property (including those mechanic's liens). Resolution of the Skylark claim will also allow the Debtor to obtain necessary construction financing, so that the Debtor may exit the bankruptcy and complete the development of the Property.

---

[2] Undersigned counsel at BCLP and others did a physical walk through of the Property on October 13, 2022.

1    The Debtor is actively engaged in evaluating all possible options for maximizing the value

2    of its assets to benefit of all stakeholders of its estate. The Debtor and its management believe that

3    successful development of the Property is ultimately in the best interest of the Debtor and all of

4    its creditors with the majority of construction to occur post-confirmation. Indeed, a course of

5    action by which the Debtor can obtain sufficient debtor-in-possession financing to stabilize this

6    case and preserve the Property and its exiting entitlements, and then confirm a plan supported by

7    new-money construction financing will likely yield a full recovery to estate creditors. Although

8    such a course would not require construction at the Property to be *completed* during the course of

9    the Debtor's bankruptcy case, it will require the Debtor and its management to act regularly and

10    decisively over the coming months to conduct all of the work incidental to that outcome. In other

11    words, while the Property will not be built during the course of the case, the Debtor and its

12    management must undertake every task necessary to implement the development plan in order to

13    preserve and maximize the value of the Property to the Debtor and its estate.

14    At the outset of the case, the Court authorized the Debtor to retain and employ Lewis R.

15    Landau, Attorney at Law ("**Landau**") as general bankruptcy counsel. *See* Docket No. 40 (order

16    dated September 15, 2022 approving the Debtor's retention of Landau). While the Debtor

17    believes Landau provided competent representation, the needs of the case now require the

18    resources of a larger firm.

19    Most notably, and among other significant matters, on or about September 14, 2022,

20    Skylark filed a *Motion for Order Appointment Chapter 11 Trustee* [Docket No. 27] (the "**Trustee**

21    **Motion**") that was set for hearing on October 6, 2022  On or about October 4, 2022, the Debtor

22    filed a *Notice of Proposed Appointment of Independent Manager and Resignation of Mohamed A.*

23    *Hadid as Manager* [Docket No. 54] which, subject to certain conditions precedent, provided for

24    the appointment of J. Michael Issa as "Independent Manager" and the resignation of Mr. Hadid as

25    a manager of the Debtor (directly or through Casablanca).  Landau clarified at the hearing on

26    October 6, 2022 that the appointment and resignation were effective upon the Court's denial of

27    the Trustee Motion.  At the hearing, the Court raised concerns as to whether, notwithstanding the

28    appointment of an Independent Manager, Mr. Hadid may nonetheless have control over the

Debtor through Casablanca's membership interest in the Debtor.  The Court also questioned to whom the Independent Manager will report.  The Court continued the hearing which is now scheduled for November 2, 2022 to permit the parties to try to resolve the Trustee Motion.

The Debtor and Skylark are in negotiations to try and resolve the Trustee Motion and the Court's concerns.  Under any scenario, it is anticipated that Issa will be the Independent Manager for both the Debtor and Casablanca, and that Hadid will have no authority with the administration of the bankruptcy case, including decisions relating to the Property.[3]

Once the Debtor confirmed it desired BCLP to be substitute general bankruptcy and restructuring counsel, BCLP immediately began the process of discussing the case with the Debtor, Skylark and other interested parties; advising the Debtor with respect to required amendments to its governance documents in order to implement the go-forward governance arrangement; coordinating with existing management to efficiently transition oversight of the Debtor; coordinating with litigation counsel with respect to the Debtor's pending adversary proceeding against Skylark; and working with the Debtor's engineering and construction vendors to ensure the preservation of the Property and its existing entitlements.

## THE DEBTOR'S NEED FOR BANKRUTPCY AND RESTRUCTURING COUNSEL AND PROPOSED EMPLOYMENT OF BCLP

As set forth more fully in the Weiss Declaration, BCLP has expertise not only in restructuring, but also in corporate governance and real estate, among other specialties. This expertise is necessary and will be utilized in this case, including to assist and guide the Debtor and its management in its efforts to preserve the Debtor's ability to develop the Property during and eventually beyond bankruptcy. Rome was not built in a day. Nor will the development of the Property be completed in the near-term. But in that time, the Debtor and the estate cannot afford to be sedentary. For example, the Property has immediate entitlement, permitting, regulatory, and potentially tax issues that require attention from qualified legal and non-legal professionals. The

---

[3] While this employment application is signed by Mr. Hadid in his current role of Manager, BCLP is advised that the Independent Manager supports BCLP's employment and will continue to retain BCLP upon his appointment.

Debtor must also quickly coordinate with its vendors and other creditors to ensure the preservation of the Property and its value for the benefit of all parties (which BCLP and the Debtor's existing and proposed future management is doing). The Debtor must also marshal various existing litigation that could impair its ability to advance the Property developments, and, particularly with respect to its disputes with Skylark, either seek an expeditious resolution or negotiate an agreeable stand-still in order to limit administrative costs while the Debtor works to secure necessary debtor-in-possession funding. BCLP and its attorneys have the experience and skill set to aid the Debtor in navigating all of these challenges. Indeed, BCLP's services as general bankruptcy and restructuring counsel will include virtually all legal services required to assist the Debtor fulling its duties under sections 1106 and 1107 of the Bankruptcy Code.

To that end, subject to further order of the Court, the Debtor respectfully requests authority to retain and employ BCLP to render legal services as the Debtor's general bankruptcy and restructuring counsel including:

(a) advising the Debtor with respect to its powers and duties as debtor-in-possession in the continued management, operation, and development of the Property;

(b) advising and consulting the Debtor and its other professionals on the conduct of this chapter 11 case, including all of the legal and administrative requirements of operating in chapter 11;

(c) advising the Debtor with respect to its corporate governance, entity and ownership structure, and corporate formalities, and taking all appropriate action with respect thereto;

(d) attending meetings and negotiating with representatives of the Debtor's creditors and other parties-in-interest;

(e) assisting and advising the Debtor with respect to the review and reconciliation of claims asserted against the Debtor's estate, including negotiating with creditors and preparing, prosecuting, and resolving objections thereto;

(f) taking all necessary actions to protect and preserve the Debtor's estate, including prosecuting actions on the Debtor's behalf, defending any action commenced against the Debtor, and representing the Debtor in negotiations concerning litigation in which the Debtor is involved, including objections to claims filed against the bankruptcy estate, or otherwise coordinating with any conflicts or special litigation counsel that may be appointed to handle the same;

(g)    preparing pleadings in connection with this chapter 11 case, including motions, applications, answers, orders, reports, and all other papers necessary or otherwise beneficial to the administration of the bankruptcy estate;

(h)    advising the Debtor in connection with effort to obtain debtor-in-possession financing, including sourcing, negotiating, documenting, and funding such financing, assisting the Debtor in complying with the terms of such financing, engaging with any lenders or other sources of such financing, and addressing all such other issues as may arise during the course of this chapter 11 case in connection therewith;

(i)    potentially advising the Debtor in connection with a proposed sale of the Property;

(j)    appearing before the Court and any appellate courts to represent the interests of the Debtor's estate;

(k)    advising the Debtor regarding tax matters;

(l)    advising the Debtor regarding insurance and regulatory matters;

(m)    taking any necessary action on behalf of the Debtor to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

(n)    initiating adversary proceedings or otherwise commencing litigation to enforce the rights of the Debtor and its estate, including evaluation and prosecution of chapter 5 causes of actions and other litigation necessary to reconcile or determine the validity, priority, or extent of claims or liens;

(o)    performing all other necessary legal services for the Debtor in connection with the prosecution of this chapter 11 case, including:  (i) analyzing the Debtor's contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtor; and (iii) advising the Debtor on corporate and litigation matters.

Importantly, the Debtor's ability to immediately preserve Property, including its overall value and its existing entitlements, and its potential to advance the development of the Property in contingent on the Debtor obtaining debtor-in-possession ("**DIP**") financing. Indeed, one of the reasons the Debtor has determined to substitute BCLP as its general bankruptcy and restructuring counsel is to provide assurance to potential DIP lenders as to the stability of the Debtor's management and operations while in bankruptcy. Accordingly, the Debtor's need for a full service, sophisticated law firm is conditioned on its ability to obtain DIP financing; likewise,

BCLP's agreement to serve as general bankruptcy and restructuring counsel is conditioned on the Debtor obtaining DIP financing. Such a condition is necessary to ensure the administrative solvency of the estate and to protect professionals in the event the Debtor cannot obtain DIP financing.

### BCLP'S QUALIFICATIONS

BCLP is a full service international law firm with 25 office around the world, including 2 offices in Southern California. BCLP counsels clients of all sizes across a range of industries in connection with transactional and litigation issues, including complex insolvency, bankruptcy and restructuring matters. BCLP and its attorneys also have significant experience in handling matters relating to real estate financing and development, construction management and disputes, regulatory and tax compliance, corporate governance and oversight, and other disciplines likely to be relevant during the course of this chapter 11 proceeding.

The Debtor has selected BCLP as its substitute bankruptcy and restructuring counsel based upon the scope of BCLP's legal service offerings and, in particular, BCLP's significant expertise with debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code.  As described above, numerous issues have arisen during the preliminary stages of this case. When combined with the already-existing challenges of restructuring a multimillion investment and development project emerging from the shade of a global pandemic and faced with steep macro-economic uncertainties, those unanticipated issues have caused the Debtor to determine it and the estate require a sophisticated, well-staffed, full service law firm to serve as general bankruptcy and restructuring counsel.  The Debtor believes that (a) BCLP has assembled a highly-qualified team of professionals and paraprofessionals to provide the necessary and critical services to the Debtor and its estate during this chapter 11 case, (b) BCLP has the knowledge and experience necessary to deal effectively with the issues that will arise in this chapter 11 case, and (c) BCLP's representation of the Debtor and its estate is critical to the success of the Debtor's chapter 11 efforts.

BRYAN CAVE LEIGHTON
PAISNER LLP
ATTORNEYS AT LAW
IRVINE

2:22-BK-14165

BCLP, or attorneys employed by BCLP, have been actively involved in major chapter 11 cases and have represented debtors in many cases, including, among others: *In re Renovate America, Inc.*, Docket No. 20-13172 (LSS) (Bankr. D. Del. Dec. 21, 2020); *In re Hamon Holdings Corp*, Docket No. 22-10375 (JTD) (Bank. D. Del. Apr. 24, 2022); *In re Loot Crate, Inc.*, Docket No. 19-11791 (BLS) (Bankr. D. Del. Aug. 11, 2019); *In re AcuSport Corp.*, Docket No. 18-52736 (JEH) (Bankr. S.D. Ohio May 1, 2018); *In re Oconee Regional Health Systems, Inc.*, Docket No. 17-51005 (AEC) (Bankr. M.D. Ga. May 10, 2017); *In re Arch Coal Inc.*, Docket No. 16-40120 (CER) (Bankr. E.D. Mo. Jan. 11, 2016); I*n re Arctic Sentinel, Inc. (f/k/a Fuhu, Inc.)*, Docket No. 15-12465 (CSS) (Bankr. D. Del. Dec. 7, 2015); *In re Bakers Footwear Group Inc.*, Docket No. 12- 49658 (CER) (Bankr. E.D. Mo. Oct. 3, 2012); *In re Patriot Coal Corporation*, Docket No. 12- 51502 (KSS) (Bankr. E.D. Mo. Jul. 9, 2012); *In re International Garden Products, Inc.*, Docket No. 10 -13207 (KJC) (Bankr. D. Del. Oct. 4, 2010); *In re Gateway Ethanol, L.L.C.*, Docket No. 08-22579 (DLS) (Bankr. D. Kan. Oct. 5, 2008); *In re Valley Food Services, LLC*, Docket No. 06 -50038 (CAN) (Bankr. W.D. Mo. Feb. 14, 2006); *In re XWW, INC., (dba Weld Racing)*, Docket No. 06-42105 (Bankr. W.D. Mo. Aug. 17, 2006); *In re Verilink Corporation*, Docket No. 06-80566 (JAC) (Bankr. N.D. Ala. Apr. 9, 2006); *In re Outsourcing Solutions, Inc.*, Docket No. 03-46349 (BSS) (Bankr. E.D. Mo. May 12, 2003); *In re Centennial HealthCare Corporation*, Docket No. 02-74974 (JEM) (Bankr. N.D. Ga. Dec. 20, 2002); *In re AcoustiSeal, Inc.*, Docket No. 02-44807 (RWS) (Bankr. W.D. Mo. Sep. 4, 2002); *In re Farmland Industries, Inc.*, Docket No. 02-50557 (JWV) (Bankr. W.D. Mo. May 31, 2002); *In re International Fibercom, Inc.*, Docket No. 02-02143 (JBN) (Bankr. D. Ariz. Feb. 13, 2002); *In re Thermadyne Holdings Corporation*, Docket No. 01-52840 (BSS) (Bankr. E.D. Mo. Nov. 19, 2001); *In re Laclede Steel Company*, Docket No. 01-48321 (BSS) (Bankr. E.D. Mo. Jul. 27, 2001); *In re Bridge Information Systems Inc.*, Docket No. 01-41593 (BSS) (Bankr. E.D. Mo. Feb. 15, 2001); *In re New York Medical Group, PC*, Docket No. 00-40363 (SMB) (Bankr. S.D.N.Y. Feb. 14, 2000).

In preparing for its representation of the Debtor in this chapter 11 case, BCLP has undertaken significant effort to become familiar with the Debtor's business and the immediate

1    and potential legal issues arising in the context of this chapter 11 case.  The Debtor believes that

2    BCLP is both well-qualified and uniquely able to represent the Debtor in this chapter 11 cases in

3    an efficient and timely manner.

4                                   **BCLP'S DISINTERESTEDNESS**

5            As set forth in BCLP's Statement of Disinterestedness and as required under section

6    327(a) of the Bankruptcy Code, BCLP is a "disinterested person" within the meaning of section

7    101(14); does not hold or represent an interest adverse to the Debtor's estate; and has no

8    connection with the Debtor, their creditors, or any other party in interest, or their respective

9    attorneys and accountants, the U.S Trustee, or any person employed in the office of the same, or

10   any judge in the United States Bankruptcy Court or Central District Court of California or any

11   person employed in the offices of the same, except as otherwise disclosed in the Statement of

12   Disinterestedness.

13                              **TIMELINESS OF THIS APPLICATION**

14           LBR 2014-1(b)(1)(e) requires that an application for retention be timely filed as promptly

15   as possible after a party is engaged by the Debtor. Here, BCLP was engaged by the Debtor

16   effective October 7, 2022 pursuant to the terms of an engagement letter dated October 27, 2022, a

17   copy of which is attached hereto as **Exhibit B**. BCLP and the Debtor worked expeditiously

18   during the intervening period to prepare and submit this Application, while also coordinating and

19   addressing numerous other critical and time-sensitive matters necessary to maintain the stability

20   of this chapter 11 case. Accordingly, this Application has been brought in a timely manner and in

21   compliance with the LBR, FRBP and Bankruptcy Code.

22

23

24

25

26

27

28

## PROFESSIONAL COMPENSATION

BCLP intends to apply for compensation for professional services rendered on an hourly basis, billed in 1/10th of an hour increments, and reimbursement of expenses incurred in connection with this chapter 11 case, subject to the Court's approval and in compliance with section 328 of the Bankruptcy Code, all other applicable provisions of the FBRP and LBR, and any other applicable procedures and orders of the Court. The hourly rates and corresponding rate structure BCLP will use in these chapter 11 cases are the same as the hourly rates and corresponding rate structure that BCLP (before any discounts, as applicable) uses in other bankruptcy and restructuring matters, as well as similar corporate and litigation matters, whether in court or otherwise, regardless of whether a fee application is required. These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

BCLP operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the Firm's expertise, performance, and reputation, the nature of the work involved, and other factors. BCLP maintains two offices in Southern California and its staffing plan for this matter includes attorneys and other professionals resident in those offices, in addition to certain other BCLP attorneys and professionals resident in other BCLP offices. In each respect, the rates charged by BCLP timekeepers will be consistent with the rates typically charged by those timekeepers for similar matters.

BCLP's current hourly rates for matters related to this chapter 11 case range as follows:

| Billing Category | U.S. Range (2022) |
|---|---|
| Partners & Counsel | $345 - $1330 per hour |
| Associates | $350 - $875 per hour |
| Paraprofessionals | $215 - $445 per hour |

BCLP is in the process of determining its hourly rates for the 2023 calendar year but anticipates a typical annual increase in January 2023 of approximately 10-12 percent. BCLP's hourly rates are set at a level designed to compensate BCLP fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[4]

The rate structure provided by BCLP is appropriate and not significantly different from (a) the rates that BCLP charges for other similar types of representations (before any discounts, as applicable) or (b) the rates that other comparable counsel would charge to do work substantially similar to the work BCLP will perform in this chapter 11 case.

In addition, BCLP intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "**Revised UST Guidelines**"), both in connection with this Application and any interim and final fee applications to be filed by BCLP in this chapter 11 case.

It is BCLP's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. Examples of such expenses include postage, overnight mail, courier delivery, transportation, computer-assisted legal research, photocopying, airfare, meals, and lodging.

---

[4] The proposed form of Order submitted with this Application includes a provision requiring BCLP to provide 10 days' notice to Debtor, the U.S. Trustee, and any official committee before implementing any periodic increases.

BCLP currently charges Debtors $0.20 per page for standard duplication in its offices in the United States. Notwithstanding the foregoing and consistent with the Local Rules, BCLP will charge no more than $0.10 per page for standard duplication services in this chapter 11 case. BCLP does not charge its clients for incoming facsimile transmissions. BCLP has negotiated rates with its vendors for computer-assisted legal research and will seek reimbursement of related expenses at the rates charged to the firm.

### COMPENSATION RECEIVED BY BCLP FROM THE DEBTOR

BCLP received a deposit in the amount of $300,000.00 from non-debtor Atrium Building, LLC ("**Atrium**") on October 26, 2022, which BCLP has been authorized to draw upon approval of its fees and expenses by the Court in accordance with its interim and final compensation procedures (the "**Deposit**").

Atrium is controlled by Mahmoud Hadid, Mohamed Hadid's brother, and paid the Deposit for the Debtor's benefit. Mahmoud Hadid, on behalf of Atrium, confirmed in writing its understanding:

1) the Deposit is a gift, and not a loan, to the Treetop bankruptcy estate. Any refund of the Deposit will be paid to Treetop or its successor, and,

2) that our client is Treetop and not Atrium. BCLP will only take instructions from Treetop and not Atrium. BCLP will only represent Treetop's interests.

BCLP reserves the right to request by separate or supplemental application an additional Retainer in appropriate circumstances. Similarly, and for the avoidance of doubt, BCLP and the Debtor reserve the right to request by separate motion authority to pay or reimburse BCLP (and the Debtor's other professionals) for fees and expenses on a monthly or other interim basis in accordance with section 330 and 331 of the Bankruptcy Code, the FRBP and LBR, and the

authority afforded to this Court including pursuant to *In re Knudsen Corp.*, 84 B.R. 668 (9th Cir. BAP 1988) and similar decisions.

Pursuant to FRBP 2016(b), BCLP has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with BCLP or (b) any compensation another person or party has received or may receive.

## NOTICE

The Debtor has provided notice of this Application to (collectively, the "**Notice Parties**"): (a) the Office of the United States Trustee for the Central District of California; (b) counsel to secured creditor Skylark; (c) counsel to secured creditor Lydda Lud Lender Tree, LLC;[5] (d) all lienholders, including the Los Angeles County Tax Collector and mechanic's lien holders; (e) the United States Attorney's Office for the Central District of California; (f) the Internal Revenue Service; (g) the top 20 largest unsecured creditors; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

Based on the foregoing as well as the Statement of Disinterestedness and the Weiss Declaration, each filed contemporaneously herewith, the Debtor respectfully requests that the Debtor be granted authorization pursuant to section 327(a) of the Bankruptcy Code, and in accordance with FRBP 2014(a) and LBR 2014-1(2), to employ BCLP as general bankruptcy and

---

[5] BCLP is advised that secured creditor Lydda Lud Lender Tree, LLC (the "**Lydda Lud Secured Creditor**") is an arms-length secured creditor and is not the same as debtor Lydda Lud LLC, case number 21-10335 (the "**Lydda Lud Debtor**").  BCLP is advised that the owner and principal of the Lydda Lud Secured Creditor owns many companies with the same name.  Mr. Hadid indirectly purchased the Lydda Lud Debtor from Michael Munayer, who remains the owner and principle of the Lydda Lud Secured Creditor.

restructuring counsel on the terms set forth herein with compensation to be at the expense of the

estate in the amount permitted by the Court, after notice and hearing.


Dated: October 28, 2022                    **TREETOP DEVELOPMENT, LLC**

                                           _____

                                           Mohamed A. Hadid

                                           Manager of Casablanca Grand, LLC
                                           Sole Member and Manager of Debtor

Dated: October 28, 2022                    Respectfully submitted,

                                           **BRYAN CAVE LEIGHTON PAISNER LLP**
                                           SHARON Z. WESS
                                           OLIVIA J. SCOTT

                                            _/s/ Sharon Z. Weiss_
                                           Sharon Z. Weiss

                                           [Proposed] Attorneys for Debtor-in-Possession

1    restructuring counsel on the terms set forth herein with compensation to be at the expense of the

2    estate in the amount permitted by the Court, after notice and hearing.

3

4

5    Dated: October **28** 2022                    **TREETOP DEVELOPMENT, LLC**

6    _____

7    Mohamed A. Hadid

8    Manager of Casablanca Grand, LLC
     Sole Member and Manager of Debtor

9

10   Dated: October ____, 2022                     Respectfully submitted,

11                                                 **BRYAN CAVE LEIGHTON PAISNER LLP**
                                                   SHARON Z. WESS
12                                                 OLIVIA J. SCOTT

13

14   _____
     Sharon Z. Weiss

15   [Proposed] Attorneys for Debtor-in-Possession

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT 1

**Substitution of Counsel**

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Sharon Z. Weiss (SBN 169446)<br>sharon.weiss@bclplaw.com<br>Olivia J. Scott (SBN 329725)<br>olivia.scott3@bclplaw.com<br>**BRYAN CAVE LEIGHTON PAISNER LLP**<br>1920 Main Street, Suite 1000<br>Irvine, California  92614-7276<br>Telephone:  (949) 223 7000<br>Facsimile:  (949) 223 7100<br><br>*Attorney for:* Debtor and Debtor in Possession | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br>Treetop Development, LLC | CASE NO.: 2:22-bk-14165-BB |
|---|---|
| | ADVERSARY NO.:<br>*(if applicable)* |
| Debtor(s). | CHAPTER: 11 |
| Plaintiff(s),<br><br>vs.<br><br><br>Defendant(s). | **SUBSTITUTION OF ATTORNEY**<br><br>**[LBR 2091-1(b)]** |

1.  The name(s) of the party(ies) making this Substitution of Attorney *(specify)*:   Treetop Development, LLC

2.  The name, address, telephone number, and email address of the new attorney are *(specify)*:
    Sharon Z. Weiss (sharon.weiss@bclplaw.com); Olivia J. Scott (olivia.scott3@bclplaw.com)
    BRYAN CAVE LEIGHTON PAISNER LLP
    1920 Main Street, Suite 1000, Irvine, California  92614-7276
    Telephone:(949) 223 7000; (949) 223 7100

3.  New attorney hereby appears in the following matters: ☒ the bankruptcy case   ☐ the above adversary proceeding

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4. The new attorney is substituted as attorney of record in place instead of the present attorney. *(Specify name of present attorney)*:  Lewis R. Landau

Date: October 28, 2022

_____          _____
Signature of party                         Signature of second party (if applicable)

_____          _____
Printed name of party                      Printed name of second party (if applicable)

_____          _____
Signature of third party (if applicable)   Signature of fourth party (if applicable)

_____          _____
Printed name of third party (if applicable) Printed name of fourth party (if applicable)

I consent to the above substitution.

Date: October 28, 2022

_____
Signature of present attorney

Lewis R. Landau
Printed name of present attorney

I am duly admitted to practice in this district.  The above substitution is accepted.

Date: October 28, 2022

/s/ Sharon Z. Weiss
_____
Signature of new attorney

Sharon Z. Weiss
_____
Printed name of new attorney

**IMPORTANT NOTICE**

Filing of this Substitution of Attorney form does not replace the need to be employed pursuant to the Bankruptcy Code. See LBR 2014-1 regarding the requirements and procedures for making an application to employ an attorney.

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2014*                    Page 2                    **F 2091-1.SUBSTITUTION.ATTY**

4.   The new attorney is substituted as attorney of record in place instead of the present attorney. *(Specify name of present attorney)*:


Date: _____


_____          _____
Signature of party                           Signature of *second* party (if applicable)

_____          _____
Printed name of party                        Printed name of *second* party (if applicable)

_____          _____
Signature of *third* party (if applicable)   Signature of *fourth* party (if applicable)

_____          _____
Printed name of *third* party (if applicable)   Printed name of *fourth* party (if applicable)

I consent to the above substitution.

Date: _10/10/2022___

_____
Signature of present attorney

_Lewis R. Landau_____
Printed name of present attorney

I am duly admitted to practice in this district.  The above substitution is accepted.

Date: _____


_____
Signature of new attorney

_____
Printed name of new attorney


## IMPORTANT NOTICE

Filing of this Substitution of Attorney form does not replace the need to be employed pursuant to the Bankruptcy Code. See LBR 2014-1 regarding the requirements and procedures for making an application to employ an attorney.

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2014*                    Page 2                    **F 2091-1.SUBSTITUTION.ATTY**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
120 Broadway, Suite 300, Santa Monica, California 90401

A true and correct copy of the foregoing document entitled: **SUBSTITUTION OF ATTORNEY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) October 28, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Courtesy NEF (parrow@buchalter.com; wbrody@buchalter.com; bharvey@buchalter.com; wlobel@tocounsel.com; dneistat@gblawllp.com; ron@ronaldrichards.com; mwachtell@buchalter.com
Give Back, LLC, a California limited liability company (ron@ronaldrichards.com)
LC Engineering Group, Inc., a California corporation (jrothstein@gblawllp.com)
Lewis R Landau (Lew@Landaunet.com)
MELT DE LA PAZ, INC. (matthew@thegreenlawgroup.com)
Giovanni Orantes (go@gobklaw.com)
PNC Equipment Finance LLC (efilings@pmcos.com)
Skylark Capital Management, LLC (wbrody@buchalter.com)
Treetop Development, LLC (Lew@Landaunet.com; sharon.weiss@bclplaw.com; dwilliams@mabr.com)
Eryk R Escobar, United States Trustee (LA) (eryk.r.escobar@usdoj.gov)

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (date) October 28, 2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | |
|---|---|
| Todd E Whitman | Jon R Haddan |
| 11400 W Olympic Blvd | 363 San Miguel Dr |
| Ste 1480 | Ste 210 |
| Los Angeles, CA 90064 | Newport Beach, CA 92660 |
| Attorneys for Golden Blue Builders, Inc. | Attorneys for Lydda Lud Lender Tree, LLC |

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| October 28, 2022 | Eva J. Sieg | /s/ Eva J. Sieg |
| *Date* | *Printed Name* | *Signature* |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## EXHIBIT 2

**Engagement Letter**



BRYAN CAVE LEIGHTON PAISNER LLP
120 Broadway  Suite 300
Santa Monica  CA 90401 2386
T: +1 310 576 2100
F: +1 310 576 2200
bclplaw.com

**October 27, 2022**

**CONFIDENTIAL**

Treetop Development LLC
9650 Cedarbrook
Beverly Hills, California 90212

**Re: Engagement of Bryan Cave Leighton Paisner LLP**

To Whom It May Concern:

Thank you for engaging Bryan Cave Leighton Paisner LLP ("**BCLP**") to provide legal services to Treetop Development LLC ("**Treetop**" or the "**Company**") to represent it in its pending Chapter 11 bankruptcy case filed in United States Bankruptcy Court for the Central District of California ("**Bankruptcy Court**") (Case No. 2:22-bk-14165-BB). We are looking forward to working with the Company. Notwithstanding the date above, our engagement commenced and is effective as of October 7, 2022. Subject to entry of an appropriate order of the Bankruptcy Court authorizing the Company to retain and employ BCLP, this and any subsequent engagement letter and the attached Terms of Business ("**Terms**") will govern the Company's relationship with BCLP and the BCLP Group (as defined in the attached Terms). In the event of any inconsistency, this engagement letter will prevail. However, please note that if the Company engages one of our offices in a non-US jurisdiction on a matter, we may need to agree to jurisdiction specific terms for that matter.

**Client**

Treetop Development LLC is our only client.

To avoid any misunderstanding in connection with our current and any future representation of the Company and in the evaluation of conflicts, we confirm that we have not been asked to act as counsel for any of the Company's subsidiaries, parent companies, affiliated entities or individuals associated with the Company. Any relationship, if undertaken by us with any other entity or individual associated with the Company, will be entered into separately.

**Scope of representation**

Our employment is subject to obtaining a Bankruptcy Court order authorizing the Company to retain and employ BCLP. Currently, the Company has engaged BCLP to represent the Company in connection with its Chapter 11 bankruptcy case styled *In re Treetop Development, LLC,* Case No. 22-14165-BB (Bankr. C.D. Cal. Aug. 1, 2022) which is pending before the Bankruptcy Court. Our engagement is not on a permanent basis and we will confirm our acceptance of any new matters after we have completed our new business intake process which will include clearing conflicts and complying with any local regulatory rules and internal business acceptance policies.

BRYAN
CAVE
LEIGHTON
PAISNER

To:    TreeTop Development LLC
Date:  October 27, 2022
Page:  2

### BCLP team

I am the relationship leader for all aspects of our relationship with the Company. Other lawyers may serve as the Company's main point of contact for specific matters on which the Company engages us. The Company may always contact me with any questions or concerns that the Company has regarding the Company's relationship with BCLP.

### Fees

We anticipate that the following lawyers and non-lawyers are likely to work on this matter.  Their current rates are set out below:

| Name | Position | Hourly rate |
|------|----------|-------------|
| Sharon Weiss | Partner | $965.00 |
| Jarret Hitchings | Counsel | $740.00 |
| Olivia Scott | Associate | $560.00 |

Generally, our fees are calculated by reference to the amount of time spent on each matter and the levels of experience of those involved. Other factors, such as the nature, complexity and urgency of the matter, and travel time, may also be taken into account. Currently our rates for lawyers likely to work on the Company's matters range from $455 to $1,295 per hour. Time devoted by legal assistants or other non-lawyers likely to work on the Company's matters is charged at billing rates ranging from $160 to $445 per hour.

Our hourly rates are generally reviewed on an annual basis. All rate increases generally go into effect in January. All time entries made after a rate increase will reflect the new rates. For further information on fees, please refer to paragraph 5 of the Terms.

### Billing and payment

Our invoices normally are issued on a monthly basis and are due and payable upon receipt. We try to include expenses and other charges, including third party costs, in the invoice for the month in which they are incurred. On occasion, however, accounting for certain expenses and charges may be delayed, in which case they will be included in the next invoice. If the Company has any questions about our billing or invoices, please contact me.

With respect to this matter, the payment of all invoices will be subject to the Bankruptcy Court's approval in accordance with processes established in the bankruptcy case.



To:     TreeTop Development LLC
Date:   October 27, 2022
Page:   3

## Deposit

BCLP is requesting a deposit of $300,000 retainer ("Deposit"). Atrium Building, LLC ("Atrium"), an insider of Treetop, has paid this Deposit on behalf of Treetop.  Treetop acknowledges and agrees that BCLP's legal fees and expenses in this matter may be paid by Atrium. Atrium is not our client on this matter. We will take instructions from Treetop and not Atrium, and will only represent Treetop's interests.

Any deposits that we receive will be placed in our client trust account on Treetop's behalf and are refundable to Treetop, and not to Atrium, to the extent not subject to disbursement. In light of the amount of the deposit we have requested in this case, we expect that it will be placed by us in our unsegregated trust account. Interest earned on that account, pursuant to California Business and Professions Code, is paid to the State Bar of California to be used for providing civil legal aid to indigent and low-income people, seniors and persons with disabilities.

Atrium has advised us in writing that it understands (1) that the Deposit is a gift, and not a loan, to the Treetop bankruptcy estate, and (2) that our client is Treetop and not Atrium.

## Conflicts of interest

It is possible that some of our present or future clients may become adverse to the Company during the time that we are representing the Company. As a condition to our undertaking this current engagement, the Company agrees that the BCLP Group may continue to represent, or may undertake in the future to represent, existing or new clients in any matter on a position that is adverse to the Company or in which the Company's interests may be adversely affected unless we represent the Company with respect to the same matter. We agree (1) that we will not represent any such other clients in the Company's bankruptcy case, and (2) that the Company's prospective consent to conflicting representation shall not apply in any instance where, as a result of our representation of the Company, we have obtained sensitive, proprietary or other confidential information of a non-public nature that, if known to any other client of ours, could be used in any other matter by that client to the Company's disadvantage. Because this waiver is essential to our willingness to accept this engagement, the Company agrees that if the validity or enforceability of the waiver is ever challenged or revoked, we may withdraw from representing the Company and continue to represent other clients, even in matters directly adverse to the Company.

Additional information regarding our conflicts policy is explained in paragraph 12 of the Terms. Our relationship with the Company is conditioned on the Company's agreement to the Terms.

In connection with the Company's engagement of BCLP, BCLP has disclosed to the Company that BCLP has certain connections to potential "parties in interest" in the bankruptcy case. Specifically, BCLP has advised the Company that BCLP represents PNC Equipment Finance LLC ("**PNC**") in connection with matters unrelated to the Company or its bankruptcy. While this existing representation is unrelated to the Company, BCLP cannot be adverse to PNC and, in the event such adversity arises in the bankruptcy case, will defer such matters to conflicts counsel. Accordingly, in the event of adversity with any interested party law firm, BCLP will defer such matter to conflicts counsel. Finally, BCLP has advised the Company that the firm represents Douglas Wilson and The Douglas Wilson Companies (collectively "**Douglas Wilson**") as court-appointed receiver over the real property located at 901 Strada Vecchia, Los Angeles, CA 90077, in connection with *Bedrosian v. Hadid*, Case No. SC129388 (the "**Strada Vecchia**



To:      TreeTop Development LLC
Date:    October 27, 2022
Page:    4

**Receivership Matter**"). Though the Company is not a party to the Strada Vecchia Receivership Matter, BCLP requested a waiver from the Company's beneficial owner Mohamed Hadid. BCLP obtained a waiver from Mr. Hadid that provides that BCLP may continue to represent Douglas Wilson in the Strada Vecchia Receivership Matter. Mr. Wilson also provided a waiver on behalf of the Douglas Wilson Company.

To the extent BCLP identifies any creditors or parties in interest are clients of BCLP, we disclose it to the bankruptcy court and make arrangements for the handling of any disputes between Treetop and them.

**Relationship**

Our attorney-client relationship is one of mutual trust and confidence. We do our best to see to it that our clients are satisfied not only with our services but also with the fees charged for those services. If the Company has any questions or concerns regarding our services or fees, the Company should contact me, the Company's relationship leader or any other lawyer with whom it is working.

By signing this Engagement Letter, and to the extent either the bankruptcy court or district court does not have exclusive jurisdiction, you agree to binding arbitration of any dispute, claim or controversy regarding our services as described in the attached Terms of Business.  If you have any questions or concerns regarding the advisability of arbitration, we encourage you to discuss them with independent counsel, your advisors, or us.

We appreciate the confidence the Company has placed in us and look forward to working with the Company. Please sign and date the attached copy of this letter and return it to us to confirm the agreed terms of our relationship.

Very truly yours,

/s/ *Sharon Z. Weiss*

Sharon Z. Weiss



To:      TreeTop Development LLC
Date:    October 27, 2022
Page:    5

**This Contract contains a binding arbitration provision which may be enforced by the parties.**

**These terms, including the attached Terms of Business, are approved.**

Dated:     10|27|22

_____

Treetop Development LLC

# Terms of Business
Bryan Cave Leighton Paisner LLP

BRYAN
CAVE
LEIGHTON
PAISNER

These Terms will apply to all instructions we receive to provide legal services unless we agree to specific variations in writing.

## TERMS

1. BCLP Group
2. Our team
3. Our services
4. Choosing and instructing third parties
5. Our fees
6. Expenses
7. Contentious matters
8. Deposits

9. Communications
10. Cloud services
11. Confidentiality, privilege and intellectual property
12. Conflicts of interest
13. Anti-money laundering
14. Criminal finances
15. Sanctions
16. Anti-bribery and corruption

17. Data privacy and marketing
18. Termination of engagement
19. Retention of files
20. Arbitration of dispute
21. Feedback and complaints
22. Insurance
23. Choice of Law
24. General

-------------------------------------------------------------------------------

## 1     BCLP GROUP

Bryan Cave Leighton Paisner ("BCLP Group") is a global law firm comprised of a network of affiliated firms and entities ("BCLP Firms"). The legal notices section of our website (www.bclplaw.com) contains a list of the locations of our offices and jurisdiction-specific information, including a description of the BCLP Firms and related regulatory information (including corporate registration details, contact details, list of Partners and information about the way the BCLP Firms and their lawyers are regulated and insured).

The BCLP Firms have agreements to refer work to each other. By engaging a BCLP Firm, you agree that the original BCLP Firm may use the services of and share information with other BCLP Firms.

The term "Partner" refers to a member or an employee with equivalent standing and/or qualifications, as required, of a BCLP Firm in which they practice. In the US, all of our Partners are members.

If at any time the practice of a BCLP Firm moves to a successor firm, the successor firm will carry out all work which you have engaged us to complete. ⇧

## 2     OUR TEAM

You may contact your Relationship Leader at any time to discuss any aspect of our services.

The selection of lawyers and others who will provide services to you will be made by the Relationship Leader taking into consideration the nature of each engagement, the location of the matter, the degree of experience and knowledge required to achieve the objective and availability.

In addition to the personnel named in any engagement letter, we may involve others as well or instead (without asking you first if necessary) including paralegals, contract lawyers, trainees, law clerks, non-practicing barristers and lawyers qualified or licensed in various jurisdictions. Unless you are notified otherwise, contract lawyers will be supervised and their time invoiced the same as other lawyers. ⇧

## 3     OUR SERVICES

Our role is limited to advising on the legal issues raised by your instructions. We base our advice and documentation on our interpretation of the law and practice at the time we do the work. You, and anyone providing information on your behalf whom we reasonably believe to be involved with the relevant matter or authorized by you, will need to provide complete and accurate information and instructions promptly. Where you are unsure as to relevance, please discuss it with us. Unless we expressly agree to do so in writing, we have no duty to review or update our advice or documentation to reflect any later changes in the law or practice. Once a matter ends, we will not remind you about future deadlines or obligations relevant to the matter.

If you or anyone providing information on your behalf wants to provide us with information that you or they have reason to believe or have been informed includes Controlled Unclassified Information, including but not limited to Covered Defense Information (including Unclassified Controlled Technical Information) and Export Controlled Information, you must advise us of such status before the information is provided and inform us of all security requirements applicable to that information, so

## Terms of Business
Bryan Cave Leighton Paisner LLP

BRYAN
CAVE
LEIGHTON
PAISNER

that necessary controls can be implemented. Classified information must not be provided to us.

The Corporate Transparency Act (CTA) requires that certain entities doing business in the United States of America disclose to federal regulators in the United States information about their beneficial owners and about the individuals who filed their formation documents. Unless specifically requested to do so, we will not advise you whether it must comply, and if so, how to identify its beneficial owners and applicants. Without a specific request to do so, we do not advise clients regarding what they must report, how and when to first report, and when the information must be updated with regulators. ⇑

### 4    CHOOSING AND INSTRUCTING THIRD PARTIES

If you ask us to select a professional on your behalf, unless we expressly agree otherwise in writing, their terms of business will apply to any advice or other services that they provide. We will use reasonable care in choosing them but will not be responsible for any of their actions or omissions, nor for any errors or deficiencies in their work, and, as their client, you will be responsible for payment of their fees and any other charges. ⇑

### 5    OUR FEES

The invoices of the BCLP Firm originally engaged may include amounts owed to other BCLP Firms, except where tax regulations require us to produce the invoice from the BCLP Firm which undertook the work. BCLP Firms share fees and/or profits, as permitted.

If we represent multiple parties, each party for whom we act is jointly and severally liable to pay the full amount of our invoices unless otherwise stated in the engagement letter.

If we agree to use an "e-billing" service, e-bills will replace paper invoices and you expressly consent to the transfer of information to a third party provider on your behalf. We do not accept responsibility for any such provider and cannot guarantee that e-billing will be uninterrupted or error-free.

If you have insurance that covers our invoices, we may recover from you any amounts that your insurer fails to pay.

We are only able to issue tax invoices to you. If, under a court order, arbitrator's award or an arrangement to which we consent, a third party is liable to pay any of the amounts invoiced, you will remain liable for any amounts unpaid by that third party.

If an invoice includes the fees and/or other charges of a third party, we may assign to that third party any cause of action in respect of their recovery. ⇑

### 6    EXPENSES

We may incur expenses in relation to a matter on your behalf and may do so without your advance approval. We will charge for certain support activities on the basis of your individual use. For a complete list of third party expenses, please contact your Relationship Leader. Generally, the BCLP Firm charges actual costs for messengers; \$.20 per page for black and white images; \$.70 per page for color images; \$5 for binding; \$8 for CDs; \$12 for DVDs; and the BCLP Firm invoices clients at a discount from vendors' regular rates to third-parties for computer research based on our independent contracts with such vendors. ⇑

### 7    CONTENTIOUS MATTERS

You will remain responsible for payment of our invoices irrespective of the outcome of any contentious matter including litigation or whether or not the invoiced amounts are in whole or in part recoverable from someone else.

We will apply any sums recovered from a third party against any outstanding invoices and any interest due on outstanding amounts.

Courts and tribunals may have discretion to award costs in any manner during and at the end of a matter. The outcome, cost and the course of most contentious matters cannot be predicted. Should you ever have questions or concerns, we encourage you to contact us. Your timely and full cooperation and assistance will play a critical role in our efforts. You always retain the right to determine whether a compromise should be pursued and accepted, or, alternatively, whether the matter should be pursued to adjudication on the merits. While we cannot assure you that there will not be an adverse outcome, our efforts will always be directed towards obtaining the most satisfactory resolution that is possible. ⇑

### 8    DEPOSITS

Any deposits (monies on account) that we receive from you will be placed in our client trust account on your behalf and are refundable to the extent not subject to disbursement. We expect that the deposit we have requested will be placed by us in our unsegregated trust account. Interest earned on that account, pursuant to California Business and Professions Code, is paid to the State Bar of California to be used for providing civil legal aid to indigent and low-income people, seniors and persons with disabilities.

July 2022

## Terms of Business
Bryan Cave Leighton Paisner LLP

We are authorized to withdraw from amounts deposited into our trust account the sums necessary to pay any invoices. You will be notified in writing of the amounts owed, any amounts applied or withdrawn, and the remaining amount of your deposit and you will also be provided with an invoice explaining the services rendered and costs incurred. If the deposited amount only covers part of an invoiced amount, then, the invoice will show the amount still due and payable. We may request additional deposits to cover further services and costs. When our services are complete or terminated, you will receive a final invoice. Any remaining balance after payment of our final invoice will be returned to the person or entity that paid the deposit. If a third party paid the deposit on your behalf, any monies remaining will be returned to the third party unless they instruct us to do otherwise. ⇧

### 9        COMMUNICATIONS

Unless we expressly agree in writing, our Partners and employees may communicate by email. Email messages, messaging services and consumer grade file-sharing sites are not secure communication methods. They carry certain risks, including non-delivery, delay, data corruption, interception, virus transfer and loss of confidentiality and privilege, breach of cybersecurity requirements and inadvertent export of Controlled Unclassified Information, including but not limited to Covered Defense Information (including Unclassified Controlled Technical Information). If you prefer to use a different method of communication please let us know; otherwise, you agree to accept the risks inherent in these forms of communication. ⇧

### 10        CLOUD SERVICES

During or after termination of our engagement we may use cloud services. If or when we do so, or where we use a subcontractor to provide cloud services, we will ensure an appropriate level of security. ⇧

### 11        CONFIDENTIALITY, PRIVILEGE AND INTELLECTUAL PROPERTY

Communications between lawyer and client are generally privileged although privilege rules vary by jurisdictions. If we receive a request for information about your matter, we will take steps to assert privilege; however, we may be compelled to disclose information by an order from a judicial or public authority. Should we be compelled to provide information we will act in accordance with local laws, regulations and ethics rules.

You should share privileged communications only with people in or outside your organization that need to know the information and only subject to suitable safeguards.

For specific advice about this subject, please contact your Relationship Leader

Subject to applicable data privacy laws and to our duty of confidentiality, we may disclose that we have a relationship with you in order to obtain conflict waivers from other clients and for marketing purposes.

We may also disclose any privileged or confidential documentation: to your staff and other professional advisers whom you identify to us or whom we reasonably believe to be involved in the relevant matter; to third parties (including consultants and barristers) who help us with legal, administrative, financial, information technology and other services; to our auditors or other professional advisers for legal, regulatory and compliance purposes; to agents instructed to collect any unpaid charges on our behalf; and to our insurers in order to comply with insurance obligations. To protect your confidentiality, we may put in place confidentiality agreements requiring any third party to treat your information as confidential.

You agree that you will treat personal and confidential information that you receive from us as confidential and in accordance with applicable data privacy laws. ⇧

### 12        CONFLICTS OF INTEREST

We have procedures in place to prevent our acting when there is a legal conflict of interest. We apply the appropriate conflicts of interest rules for the jurisdiction(s) where the representation takes place and the rules applicable to the lawyers working on a matter. If you are aware, or become aware, of a possible conflict, please immediately notify your Relationship Leader.

In certain cases, more than one of our clients may have an interest in the same subject matter of a transaction, or be competing for the same asset. For example, more than one of our clients may seek to buy an entity through auction sale or tender for a contract. If this happens, you agree that we are free to represent you and one or more other clients with the same interest, if we can do so in accordance with applicable conflict rules.

From time to time, issues arise relating to legal ethics or our duties under the professional conduct rules that apply to lawyers. These might include, for example, conflict of interest issues, and could even include issues raised because of a dispute between the BCLP Firm and you over the handling of a matter. When such issues arise, we typically seek the advice of our firm counsel, who is an expert in such matters. We consider such consultations to be attorney-client privileged communications between firm personnel and counsel for the firm. A few courts, however, have held that under some circumstances such communications involve a conflict of interest between the client and our firm and

## Terms of Business
Bryan Cave Leighton Paisner LLP



that our consultation with firm counsel may not be privileged, unless we either withdraw from the representation of the client or obtain the client's consent to consult with firm counsel.

We believe that it is in our clients' interest, as well as our firm's interest, that when legal ethics or related issues arise during a representation, we obtain expert analysis of our obligations. Accordingly, you agree that if we determine during the course of the representation that it is either necessary or appropriate to consult with our internal or outside counsel, we have your consent to do so and our continued representation of you in such situations does not waive any attorney-client privilege that our firm may have to protect the confidentiality of our communications with our counsel. ⇧

### 13    ANTI-MONEY LAUNDERING

In order to comply with anti-money laundering and anti-terrorist financing legislation ("AML") in certain jurisdictions and our global business acceptance policies and procedures, we may be required to obtain, retain, and periodically update evidence of your identity and people related to you (which may include criminal and regulatory convictions and proceedings information). Sometimes we may need to ask you for documents or information. If we do so, you must provide this information promptly or we may not be able to act, or to continue to act, for you.

If we are unable to satisfy ourselves as to the source of funds, monies paid to us will usually be frozen and not applied to the matter unless and until the appropriate authorities consent.

We do not accept payments in cash whether for our fees or otherwise. We will not make payments to anyone other than you unless that is a necessary part of the matter, and then only if you engaged us in writing to do so, or in order to return money to a third party as described in the paragraph related to Deposits. ⇧

### 14    CRIMINAL FINANCES

We have a legal obligation not to engage in any activity, practice, or conduct that could facilitate the illegal evasion of UK, US and/or other applicable tax laws. ⇧

### 15    SANCTIONS

Applicable rules and laws (including those in respect of money laundering and any economic, financial, political, legal and other sanctions imposed by the United Kingdom, European Union, the United States of America or other relevant country or international organization ("Sanctions")) or court orders may oblige us to stop or delay carrying out your instructions or proceeding with the relevant matter. We may also have to keep any

monies, assets or property in our possession or control unless and until a relevant authority and/or agency allows us to deal with them. As long as we have acted in good faith, we will have no liability to you for the consequences (including any third party fees, costs, expenses or other charges that you may incur as a result) of any steps we take to fulfill our reasonable understanding of our legal or regulatory obligations. ⇧

### 16    ANTI-BRIBERY AND CORRUPTION

We have a zero-tolerance approach to bribery and corruption and are committed to complying with all applicable anti-bribery and corruption laws and regulations. ⇧

### 17    DATA PRIVACY AND MARKETING

Our privacy notice at the **Privacy Notice section of our website** explains how we collect and use personal information. This includes the personal information that you provide to us, about yourself, your employees, or other people that may be relevant to a matter on which we have been engaged (together, "Personal Information"). In respect of any Personal Information you share with us you shall ensure that such Personal Information is accurate and up to date, that you have the necessary authority from the data subject(s) for us to use and transfer it in respect of the matter that we are working on for you, and that the data subject(s) have been given a copy of our privacy notice.

As a general matter, once Personal Information is provided to a BCLP Firm we are responsible for determining how it will be processed to enable us to provide you with services and to comply with our client, professional, regulatory, and legal obligations. In some jurisdictions, we would be referred to as a "data controller". As our privacy notice describes, there may be situations in which individuals have the right under applicable privacy laws to access and correct their Personal Information, or ask that we delete it ("Data Subject Request"). If we receive a Subject Access Request in connection with a matter on which we are engaged, we will discuss this (and any associated costs) with you as appropriate.

If you have any questions regarding our processing of your Personal Information or if you wish to exercise your privacy rights, please contact us at **privacy@bclplaw.com**

If you transmit Personal Information directly from the European Economic Area ("EEA") to one of our non-EEA offices, the law may require you to ensure appropriate safeguards are in place. There are similar requirements when transferring Personal Information from other jurisdictions. If you request that one of our offices transmit Personal Information to you outside of the EEA

**Terms of Business**
Bryan Cave Leighton Paisner LLP



---

or other jurisdiction with similar restrictions, the law requires us to ensure appropriate safeguards are in place. You should consult with your Relationship Leader prior to any transfers being undertaken. ⇧

### 18    TERMINATION OF ENGAGEMENT

You may terminate our engagement with or without cause at any time. Termination of our services will not affect your responsibility to pay for legal services rendered, expenses and any other charges incurred, and for any further work required in order to facilitate an orderly handover of matters.

We may suspend our work or terminate our engagement for any of the reasons permitted under the Rules of Professional Conduct or professional rules of any jurisdiction applicable to your matter, including where there is a legal conflict of interests, where you fail to promptly pay our invoices, for misrepresentation of (or failure to disclose) any material facts, for action taken contrary to our advice, or any other conduct or situation that in our judgment impairs an effective attorney-client relationship or presents conflicts with our professional responsibilities, including where we risk breaching applicable rules and laws, including our obligations in respect of AML, bribery and corruption, the facilitation of tax evasion and applicable Sanctions. These Terms constitute reasonable warning that we will withdraw from representing you if you fail substantially to fulfill an obligation to us regarding our services.

We will give you reasonable notice if we intend to suspend our work or stop acting for you unless prevented from doing so by reasons outside of our reasonable control.

In the US, we may request a stipulation executed by you allowing us to withdraw as your lawyer in any judicial, arbitration or similar proceedings, in which event you agree in advance to our withdrawal.

Unless we expressly agree in writing, you cannot assume that any BCLP Firm(s) will continue to be free to represent you in a future matter. You agree that we may close any matter if it has not been billed to for more than six months and matters will automatically be closed 12 months after the last work date. If the matter is the final work you have requested of us, our attorney-client relationship with you will then cease without further notice.

If at any time there are no active matters in which we are representing you, you will be considered a former, rather than a current, client. Whether you are a current or former client, we will have no duty to accept new matters from you unless mutually agreed in writing.

We may keep all the money that we have the right to keep in accordance with applicable laws, professional and local rules and the Deposit section above until you have paid all of our charges and any interest due to us. ⇧

### 19    RETENTION OF FILES

We reserve the right to keep a full copy of your files for legal, regulatory and professional indemnity reasons. Generally, we will keep client files for a period of ten years after a matter has been closed by us. After this time client files will be securely destroyed or deleted unless we expressly agree otherwise in writing. ⇧

### 20    ARBITRATION OF DISPUTES

**By signing and returning our engagement letter, you agree that any and all disputes, claims or controversies arising out of or relating to these Terms, our relationship, our work, our invoices or our services, shall be determined by final and binding arbitration. Disputes, claims and controversies subject to final and binding arbitration include, without limitation, any claims for professional malpractice, breach of fiduciary duty, breach of contract, disputes over our fees and expenses, negligence, disputes regarding the quality of our services and claims relating to or arising out of your or our performance under these Terms.**

**The matters submitted to arbitration shall be heard in Los Angeles by an arbitration panel, consisting of one neutral arbitrator appointed by each party and a neutral arbitrator appointed by the two arbitrators. The arbitration will be held in accordance with the then-existing Comprehensive Arbitration Rules ("Rules") of the Judicial Arbitration and Mediation Services ("JAMS"); provided, however, that nothing herein shall limit the parties' right to stipulate and agree to conduct the arbitration before and pursuant to the rules of any other agreed-upon arbitration services provider in Los Angeles. All three neutral arbitrators must be JAMS panelists. Any party to the arbitration may request JAMS to identify panels of retired or former jurists qualified and able to sit as an arbitrator of the matters submitted for arbitration and the arbitrators shall be selected by the parties from such panels pursuant to JAMS Rules. The arbitrators shall apply California substantive law, and any applicable U.S. federal substantive law, in resolving the parties' dispute to the proceeding, except to the extent federal substantive law would apply to any claim. Any proceedings conducted shall be private and confidential and shall not be**

## Terms of Business
Bryan Cave Leighton Paisner LLP



disclosed to the public by the arbitrators or the parties to the arbitration except as necessary to reduce the award to a judgment in a court of law.

Any arbitration award shall be final, binding and conclusive on the parties, without the right to appeal and subject only to judicial review as provided by California statutes governing arbitrations, and a judgment rendered on the arbitration award may be entered in any state or federal court having jurisdiction. The arbitrators shall be authorized to determine all issues in arbitration including whether the dispute must be arbitrated and whether the arbitration clause is unconscionable as if the arbitrators were sitting as a judge without a jury, and the arbitrators shall render a written reasoned award with findings of fact and conclusions of law. The arbitrators shall make all decisions with respect to the nature and amount of discovery. Each party shall bear its own attorneys' fees and costs of the arbitration and its pro-rata share of the costs of the arbitration, which include fees for the arbitrator(s), who, unlike a court, are paid to hear the case.

You understand that by entering into this Agreement, you are voluntarily waiving your right to a trial in a court. You also understand that the ability of the parties to obtain documents, witness statements, and other discovery is generally more limited in arbitration than in court proceedings. You further understand that you and the BCLP Firm are waiving, to the extent permitted by law, any right you have to an award of punitive damages.

State Bar procedures

Notwithstanding the above, in a dispute over legal fees or costs, you have the right to elect arbitration pursuant to the fee arbitration procedures of the local bar association, as set forth in Cal. Bus. & Prof. Code §§ 6200, et seq. The statutory fee arbitration procedures permit a trial after arbitration, unless the parties agree in writing, after the dispute over fees, costs, or both, has arisen, to be bound by the arbitration award. If you do not elect to proceed under the statutory fee arbitration procedures, any dispute over fees shall be resolved by binding contractual arbitration as set forth herein.

You are urged to discuss the advisability of arbitration with your Relationship Leader, your independent counsel or your other advisors and to ask any questions which you may have. Your execution and delivery of our engagement letter will confirm that you have either obtained

independent legal advice with respect to the binding arbitration clause, or you have decided to engage us without seeking such advice. ⬆

### 21    FEEDBACK AND COMPLAINTS

If you are unhappy with our service or an invoice, please contact your Relationship Leader.

We hope to resolve any problem to your satisfaction, but if we do not or if you wish to make a formal complaint, please contact our designated complaints counsel by email at aagado@bclplaw.com, or by telephone on +1 314 259 2745. The designated complaints counsel will give you a copy of our complaints procedure. You may have the right to complain to an independent or professional body in the relevant jurisdiction. Further information is available at https://www.bclplaw.com/en-GB/legal-notices/legal-notices.html.

If you are unhappy with the service of a third party we have instructed on your behalf on your matter, you may have the right to complain to the relevant professional body in the relevant jurisdiction. Our designated complaints counsel can provide further details. ⬆

### 22    INSURANCE

Our primary professional indemnity insurer is ALAS, 311 South Wacker Drive, Suite 5700, Chicago, IL 60606. The BCLP Group additionally carries insurance which is compliant with EU professional indemnity rules and applicable local laws. Further information is available at https://www.bclplaw.com/en-GB/legal-notices/legal-notices.html or from our Professional Risk and BCLP Insurances Director who can provide you with details including numbers and the territorial extent of the policies. ⬆

### 23    CHOICE OF LAW

The relationship between you and the BCLP Firm including the validity, construction, and enforceability of this engagement letter, shall be governed in all respects by the law and professional conduct rules of California, without regard to conflicts of laws principles. Notwithstanding the foregoing, the arbitration provisions in Section 20 and any resulting arbitration shall be governed by the U.S. Federal Arbitration Act. ⬆

### 24    GENERAL

The Terms (in particular the section regarding limitation of liability) are subject to the provisions of any applicable local rules and laws.

If any of the provisions of these Terms are or become invalid, that will not affect the validity of the remaining provisions. The invalid provisions, or any missing

## Terms of Business

Bryan Cave Leighton Paisner LLP

provisions, will be replaced by the valid provisions that
come closest to the economic intent and purpose of the
parties. ⇧